CALLAHAN, Circuit Judge,
dissenting:
I concur in Part II of the majority’s memorandum disposition, but I respectfully dissent from Part I.
Claims brought pursuant to the False Claims Act are subject to -heightened pleading requirements. Fed.R.Civ.P. 9(b); Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054-55 (9th Cir.2011). Rule 9(b) “requires a party to state with particularity the circumstances constituting fraud or mistake, including *537 the who, what, when, where, and how of the misconduct charged.” Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998 (9th Cir.2010) (internal quotation marks omitted). While a plaintiff need not provide “representative examples of false claims to support every allegation,” he must at least allege “particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.” Id. at 998-99 (quotation marks omitted); see also United States ex rel. Lee v. SmithKline Beeeham, Inc., 245 F.3d 1048, 1051-52 (9th Cir.2001) (explaining that Rule 9(b) requires that a complaint be “specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong” (quotation marks omitted)).
Jajdelski’s fourth-amended complaint does not satisfy these standards. As the majority points out, Jajdelski alleges that he discovered extra diplomas for an October 25, 2003, Heritage graduation ceremony that were never handed out, and that he had conversations with various Kaplan employees who told him about the practice by Kaplan admissions representatives of signing up phantom students. Jajdelski also makes allegations about Kaplan’s (perfectly legitimate) process for acquiring and processing financial aid information from prospective students; Kaplan’s equally legitimate enrollment goals; Kap-lan’s refusal to let Jajdelski see “actual” enrollment and attendance records; and “many of the college staff’ being engaged in fraudulent activities occurring “before and after his employment.”
While these allegations provide circumstantial support for Jajdelski’s theory that Heritage, and subsequently Kaplan, engaged in a practice of signing up phantom students in order to receive financial aid, they do not tie the extra diplomas, employee confessions, or wrongdoing by apparently everyone at all times to an actual false claim for financial aid by Kaplan. See Cafasso, 637 F.3d at 1055 (“It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim.”) (quotation marks omitted); see also United States ex rel. Aflatooni v. Kitsap Physicians Serv., 314 F.3d 995, 997 (9th Cir.2002) (“[A]n actual false claim is ‘the sine qua non of a False Claims Act violation.’ ” (citation omitted)).
It is true that Jajdelski may, instead of providing “representative examples of false claims to support every allegation,” set out the “particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.” Ebeid, 616 F.3d at 998-99 (emphasis added). But Jajdelski does not provide a representative false claim for any allegation. Nor does he provide “strong inference” that Kaplan actually submitted a false claim. Put another way, Jajdelski’s complaint relies too much on innuendo, ultimately failing to lend the requisite specificity — “the who, what, when, where, and how,” Ebeid, 616 F.3d at 998 (internal quotation marks omitted) — to his claim that “Kaplan submitted false claims to U.S. agencies.”[1] *538 Rule 9(b) requires the plaintiff, not appellate judges, to connect the dots. Because Jajdelski has not done that here, despite many opportunities to do so, I respectfully dissent.

. An adequate allegation might be, for example, that Kaplan enrolled Jane Doe in June 2003 for a four-month course; Kaplan submitted (or at least prepared to submit) financial aid forms to the government for Ms. Doe; Ms. Doe dropped out of her program in July 2003; and Ms. Doe's diploma was among those never handed out at the October 2003 graduation ceremony.
The closest Jajdelski comes to making such an allegation is in paragraph 64 of the fourth-amended complaint, in which he claims that, "several years prior” to October 23, 2003, a specific student attended Heritage, received *538 and then sought deferment of financial aid, and was "graduated.” According to Jajdel-ski, the student "presented to the college again a year prior” and “was put in classes to finish the program,” but Kaplan listed her as "graduated” the entire time. However, Jaj-delski does not say when the student "finished the program," and the events for which he gives specific dates all occurred before Kap-lan acquired Heritage in May 2003. More important, these allegations do not actually claim (or strongly imply) that Kaplan received financial aid for the student while she was not enrolled.