**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| REGIE SALGADO, ex rel. United States of America; MELINDA ZAMBRANO, ex rel. United States of America, | No. 22-55721 |
| Plaintiffs-Appellants, | D.C. No. 2:16-cv-03767-PSG-SK |
| and | |
| STATE OF CALIFORNIA; UNITED STATES OF AMERICA, | MEMORANDUM[*] |
| Plaintiffs, | |
| v. | |
| TRUCONNECT, | |
| Defendant-Appellee, | |
| and | |
| NATHAN JOHNSON; MATTHEW JOHNSON, | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted October 19, 2023
Pasadena, California

Before: CLIFTON and SANCHEZ, Circuit Judges, and KORMAN,[**] District Judge.
Dissent by Judge CLIFTON.

This is a *qui tam* False Claims Act ("FCA") and whistleblower retaliation case. Plaintiffs-Appellants Regie Salgado and Melinda Zambrano are former employees of Defendant-Appellee TruConnect Communications, Inc. ("TruConnect"). TruConnect is a cellphone network operator that participates in the Lifeline Program, a program by which the Federal Communications Commission ("FCC") and state governments subsidize phone service for low-income Americans. *See* 47 U.S.C. § 254(b)(1), (b)(3); 47 C.F.R. § 54.401(a). Salgado and Zambrano allege that TruConnect engaged in two central schemes to defraud the government. After Salgado and Zambrano discovered and protested TruConnect's fraudulent conduct, they allege, TruConnect retaliated by terminating them.

The District Court granted TruConnect's motion to dismiss relators' FCA fraud and related state law claims. The District Court later granted summary judgment as to the remaining FCA retaliation and related state law claims. This

---

[**] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

appeal followed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  Reviewing both rulings *de novo*, we affirm.  *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898 (9th Cir. 2017); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1060 (9th Cir. 2011).

1.  Relators' *qui tam* fraud claims do not meet the heightened pleading standard of Rule 9(b).  *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  To survive this heightened standard, Relators must identify either "representative examples of false claims" or allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010).  The Complaint fails to do either.

2.  Relators' allegation that TruConnect uses third-party vendors called "street teams" to sign up subscribers without confirming their eligibility fails for two reasons.  First, as a matter of law, TruConnect is not responsible for determining initial subscriber eligibility.  *See* Resol. T-17366 - Modifications to the Cal. Lifeline Program Rules - Gen. Ord. 153 - in Compliance with the Fed. Commc'ns Comm'n's Lifeline/Link-Up Reform Ord. (FCC 12-11), 2012 WL 2945692 (Cal. Pub. Util. Comm'n July 12, 2012).  Second, the Complaint lacks any well-pled allegation that TruConnect failed to receive proper documentation for any subscriber for which TruConnect actually submitted a claim for

3

reimbursement. *See* 47 C.F.R. §§ 54.410(b)(2)(i)–(ii), (c)(2)(i)–(ii).[1] We do not relax Rule 9(b)'s particularity requirement simply because Relators allege that the fraudulent billing is within the defendant's exclusive possession. *See Ebeid*, 616 F.3d at 999. At bottom, Relators cannot, as they repeatedly purport to do here, describe a fraudulent scheme but then "allege simply and without any stated reason that claims requesting illegal payments must have been submitted." *Cafasso*, 637 F.3d at 1058 (citations omitted and cleaned up).

3. Relators' allegation that TruConnect knowingly submitted fraudulent usage minutes from robo-calls and wrong-number calls to circumvent the FCC's usage requirements does not meet the requirements of Rule 9(b). Although Relators allege that Regie Salgado analyzed TruConnect's subscriber data and found a low amount of subscriber usage, they do not explain how billing the government for low usage violates FCC regulations or otherwise constitutes fraud. Relators' further allegations that TruConnect essentially manipulates robo-calls and then submits fraudulent usage data are vague and fatally unsupported. The Complaint does not explain with particularity who at TruConnect was behind "pushing" the robo-calls, or how or when they went about doing so. "This type of allegation, which identifies a general sort of fraudulent conduct but specifies no

---

[1] We reference the 2015 version of the regulations, which were in force at the time of TruConnect's alleged misconduct.

particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude." *Cafasso*, 637 F.3d at 1057.

4. Relators have also failed to adduce sufficient evidence to support their claims for retaliation. Relators do not dispute that co-CEOs Nathan and Matthew Johnson made the ultimate decision to eliminate Relators' positions. Relators have not presented any evidence that the Johnson brothers acted with a discriminatory or retaliatory motive. Relators are thus left to survive summary judgment with a "cat's paw theory" of liability, which requires establishing that one of the Johnsons' subordinates, in response to Relators' whistleblowing, "set in motion" the Johnsons' decision to eliminate Relators' jobs. *Cafasso*, 637 F.3d at 1060–61 (alterations adopted and citations omitted).

Relators identify three TruConnect employees potentially involved in their firing: Todd Wallace, Earl Peck, and Rick Burgar. But Relators fail to present non-speculative evidence from which a reasonable jury could conclude that any of those three individuals were aware of Relators' whistleblowing and were involved in the decision to eliminate their jobs.

While the parties dispute whether Todd Wallace was the head of Relators' department, there is no evidence in the record that Wallace was aware of Relators' whistleblowing activity. Relators identify a single July 13, 2015 email from Salgado to Wallace in which Salgado analyzed usage data from a third-party

5

vendor and "found evidence to examine the sales techniques of [the vendor]." Relators present no evidence that Wallace ever responded to Salgado's email, ever communicated with the Johnson brothers or anyone else about Salgado's work, or was aware from this email that Relators believed TruConnect was defrauding the government. Only by way of speculation could a reasonable jury conclude that Wallace, or any other subordinate, set in motion the Johnsons' decision to eliminate Relators' jobs specifically in response to Salgado's investigation of a third-party vendor. We have found summary judgment appropriate in these circumstances. *See Cafasso*, 637 F.3d at 1060–61 (affirming grant of summary judgment on an FCA retaliation claim where relator merely speculated that other officials who knew about her conduct may have influenced the decision-maker).

5. We decline TruConnect's request for fees under 31 U.S.C. § 3730(d)(4) because Relators' claims are not frivolous, and there is no evidence that they acted with an improper motive. *See id.* at 1062 (noting a concern about granting fee awards under § 3730(d)(4) because "awarding fees against a qui tam claimant may chill prospective relators from exposing frauds on the government").

**AFFIRMED.**

6

No. 22-55721, *Salgado v. TruConnect*

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent. This case primarily presents claims under the False Claims Act of fraud upon the government. In my view, the allegations in the complaint are not so insufficiently specific or implausible as to support dismissal at the pleading stage, even under the heightened pleading standard of Fed. R. Civ. P. 9(b). As employees at TruConnect, Plaintiffs were personally acquainted with TruConnect's actions and well positioned to identify potential fraud. Their complaint alleges more than enough to survive a motion to dismiss.

TruConnect's counsel acknowledged at oral argument that billing the government through the Lifeline program or other similar program was "the only business of Tru Connect." It is not an insubstantial business. The complaint alleges that TruConnect was paid over $5 million each month by the federal government and the state of California.

Plaintiffs observed and alleged details of a scheme to maximize payments to the company under the Lifeline program. Under the program, TruConnect would only be reimbursed for phones that had at least some call or text activity, presumably by the low-income person to whom the phone had been given. Plaintiffs' complaint alleged that in two months of 2015, the federal government paid TruConnect $651,597 for phones with zero to one minute of usage. It alleged

1

that TruConnect sought to maximize reimbursements by treating as "active" phones that were broken and in the possession of the company and phones that had not yet been placed in the hands of program beneficiaries. It also alleged that TruConnect sought to generate usage artificially in order to qualify for reimbursements under Lifeline regulations. For example, it was asserted that "TruConnect circumvents the Lifeline requirements by pushing robo-calls to Lifeline accounts." It contended that "70,433 phones between June and July 2015 had less than one minute of usage" and no texts. It also asserted that "4,800 phones received text messages, but no calls, for over a year," and that "many of the incoming text messages on these phones were random pictures of office interiors or car engines, appearing to be illegitimate." That pattern of usage was alleged to be inconsistent with actual usage by customers in the experience of a Plaintiff who had worked in the industry for many years. The complaint also contended that TruConnect officers discussed developing an Auto-Dialer App that would be preloaded onto each phone to allow the company itself to generate usage in order to manufacture qualification for reimbursement even if the customer never used the phone.

TruConnect argues that Plaintiffs did not identify any specific examples of false claims submitted by TruConnect under the Lifeline program. That appears to be true but is not surprising because that was not information to which Plaintiffs

2

had access. It cannot be the case that a fraudster can escape accountability by hiding certain specific details about the actual execution of the fraud. The complaint does include an allegation that a TruConnect vice president confirmed that the company did bill the Lifeline program for users with one minute of usage. More broadly, the allegations in the complaint "lead to a strong inference that [false] claims were actually submitted." *Ebeid ex rel. U.S. v. Lungwitz,* 616 F.3d 993, 998-99 (9th Cir. 2010). The district court's dismissal of the FCA claim rested on a finding by the court that Plaintiffs "failed to allege TruConnect fraudulently billed the government." We cannot reasonably assume that a company that went to elaborate efforts to generate one minute of usage for phones never actually sought reimbursement for any of those phones, especially if an officer confirmed that the program was billed for phones with one minute of usage. That reimbursement was not actually sought by TruConnect is not a reasonable inference, let alone a compelling one.

Plaintiffs' claims may not be true, or they might be exaggerated, but they have not been disproven. They should not be assumed to be false. The allegations are not so unspecific or implausible to terminate this action at the pleading stage.

Similarly, in my view, Plaintiffs have raised genuine issues of material fact regarding their whistleblower retaliation claim, which the district court discarded by granting TruConnect's motion for summary judgment. The error in awarding

3

summary judgment may be best illustrated by the court's explanation of why it accepted TruConnect's contention that a TruConnect officer named Todd Wallace was not involved in the decision to terminate Plaintiffs. Beneath that conclusion was a dispute over Wallace's relationship with Plaintiffs, in particular whether Wallace was the head of Plaintiffs' department. The district court explained its conclusion as follows:

> For support, Relators point to their declarations, in which they each declare that Wallace was their department head at the time of their termination. *Zambrano Decl.* ¶¶ 21–22; *Salgado Decl.* ¶ 22. However, "uncorroborated and self-serving declarations" are insufficient to create a genuine dispute of material fact. *King v. United Parcel Serv.*, 152 Cal. App. 4th 426, 433 (2007); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Relators' uncorroborated and self-serving statements do not create a genuine dispute as to whether Wallace, rather than Milhizer, was Relators' department head.

That reasoning is wrong. The individual Plaintiffs were competent to testify as to who was the head of their department. Those declarations did not need further corroboration to create a genuine issue of material fact under Fed. R. Civ. P. 56(a). That testimony by a witness, even a party, might serve that person's interest is not reason by itself to disregard it. Parties regularly testify, and that testimony, if competent, must be considered. Indeed, most testimony is intended to serve a party's interest; otherwise it would be irrelevant.

The orders granting the motion to dismiss and the motion for summary judgment should be vacated and the case remanded for further proceedings.

4