**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**FOR PUBLICATION**

RICHARD CHUDACOFF, M.D.,
 *Plaintiff-Appellant-Cross-Appellee,*

v.

UNIVERSITY MEDICAL CENTER OF
SOUTHERN NEVADA, a political
subdivision of Clark County, State
of Nevada; BRUCE L. WOODBURY,
TOM COLLINS, CHIP MAXFIELD,
LAWRENCE WEEKLY, CHRIS
GIUNCHIGLIANI, SUSAN BRAGER, and
RORY REID, Clark County
Commissioners, ex-officio, the
Board of Trustees of University
Medical Center of Southern
Nevada; KATHLEEN SILVER, an
individual; THE MEDICAL AND
DENTAL STAFF OF THE UNIVERSITY
MEDICAL CENTER OF SOUTHERN
NEVADA; JOHN ELLERTON, M.D., an
individual; MARVIN J. BERNSTEIN,
M.D., an individual; DALE
CARRISON, M.D., an individual;
DONALD ROBERTS, M.D., an
individual,
          *Defendants-Appellees-*
              *Cross-Appellants.*

Nos. 09-17558
and
09-17652

D.C. No.
2:08-cv-00863-
ECR-RJJ

OPINION

7663

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Senior District Judge, Presiding

Argued and Submitted
December 9, 2010—San Francisco, California

Filed June 9, 2011

Before: Stephen Reinhardt, Michael Daly Hawkins, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Hawkins

**COUNSEL**

Jacob Hafter, Law Office of Jacob Hafter & Associates, Las Vegas, Nevada, for the plaintiff-appellant/cross-appellee.

Lynn M. Hansen, Jimmerson Hansen, Las Vegas, Nevada, for the defendants-appellees/cross-appellants.

Kim Irene Mandelbaum and Robert McBride, Mandelbaum, Schwarz, Ellerton & McBride, Las Vegas, Nevada, for the defendants-appellees/cross-appellants.

## OPINION

HAWKINS, Senior Circuit Judge:

Richard Chudacoff, M.D. ("Chudacoff") appeals the grant of summary judgment (the "November Order") in his civil rights action arising from the suspension of his medical staff privileges at the University Medical Center of Southern Nevada ("UMC"), a county hospital organized under the laws of Nevada, as well as the denial of his motion for leave to file a third amended complaint asserting claims under 42 U.S.C. § 1983.

This case is not about whether Chudacoff's UMC staff privileges were a protected property interest or whether he was denied adequate procedural protections when his privileges were suspended without notice or opportunity to be heard. *See Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003). These issues were resolved in Chudacoff's favor by an earlier decision of the district court (the "April Order") and have not been appealed by defendants. Instead, this case asks us to determine only whom, if anyone, Chudacoff may sue under 42 U.S.C. § 1983 for his constitutional injury.

We answer this question by reversing as to the individually named doctor defendants who serve as voting members of UMC's physician credentialing committee and who therefore directly participated in the unlawful suspension of Chudacoff's staff privileges. The individual committee members may not be county employees, but their physician credentialing decisions on behalf of a county hospital constitute state action. Because Chudacoff has not shown that his due process

injuries were the product of institutional policies, however, we affirm as to all other defendants.[1]

## BACKGROUND

### I.    The Defendants

UMC is a county hospital created by the Clark County Board of Commissioners and supported through public funds. *See* Nev. Rev. Stat. §§ 450.020-.060, 450.230-.390. Because the population of Clark County is greater than 400,000, the Clark County Commissioners constitute, ex officio, the UMC Board of Trustees ("the Board"), as required by Nevada law. *See id.* § 450.090. The Board has final approval authority over UMC's Bylaws. Chudacoff seeks to name all Clark County Commissioners as defendants in their ex officio capacity as the Board.

Staff privileges at UMC are initially granted, suspended, or otherwise modified by the Medical and Dental Staff of UMC ("Medical Staff"), a professional peer-review body created and delegated this authority by the UMC Bylaws. The Medical Staff acts through its governing arm, the Medical Executive Committee ("MEC"), also expressly created by the UMC Bylaws, whose membership includes, *inter alia*, the UMC Chief of Staff (at all relevant times defendant John Ellerton), the Vice Chief of Staff (defendant Dale Carrison), the Secretary (defendant Marvin Bernstein), and the chief of each department (including defendant Donald Roberts, Chief of the Department of Obstetrics and Gynecology). In addition, UMC's CEO (defendant Kathleen Silver) sits as a non-voting member of the MEC. The MEC's staff credentialing decisions are guided by the hospital Bylaws, Credentials Procedures Manual, and Fair Hearing Plan.

---

[1]We address the remaining issues on appeal and cross-appeal in a separate memorandum disposition filed concurrently with this opinion.

Like the hospital itself, the Medical Staff owes its existence to Nevada law, which requires UMC, as a county hospital, to "organize a staff of physicians composed of each regular practicing physician, podiatric physician and dentist in the county in which the hospital is located who requests staff membership and meets the standards set forth in the regulations prescribed by the board of hospital trustees." Nev. Rev. Stat. § 450.440(1). Through the UMC Bylaws, the Board has delegated considerable administrative and oversight duties over the hospital and its physicians to the Medical Staff, though the Board retains final appellate review of the MEC's staff credentialing decisions as well as final policymaking authority.

## II.   Suspension of Chudacoff's Privileges

Chudacoff was appointed an Assistant Professor with the University of Nevada School of Medicine in 2007 and granted staff privileges at UMC in the ob/gyn department shortly thereafter. A few months after being granted staff privileges at UMC, Chudacoff received a May 28, 2008 letter from Ellerton informing him that at its monthly meeting the day before, the MEC had suspended Chudacoff's obstetrical privileges indefinitely, imposed a direct supervision requirement on his performance of surgeries, and ordered mandatory drug testing and physical and psychological evaluations. This disciplinary action was not a thirty-day "summary suspension," (which can be immediately imposed pursuant to Article XI of the hospital Bylaws upon showing that a physician's conduct poses a substantial and imminent risk of danger to others), but rather a "routine administrative action," which may be undertaken only upon satisfaction of specific procedural requirements, as laid forth in the hospital Bylaws, Credentialing Manual, and Fair Hearing Plan. The letter did not explain, as required by the Bylaws, the basis for the adverse actions. Chudacoff alleges he had no knowledge until he received this letter that the MEC was considering altering his privileges.

The letter also informed Chudacoff of his right to a fair hearing, pursuant to the hospital's Bylaws and Credentialing Manual. He requested one on June 2. However, before he finally received a response six weeks later, and well before he actually had an opportunity to be heard before a fair hearing committee, several significant events had already transpired: the University of Nevada had terminated his employment with the School of Medicine due to his suspension of clinical privileges; defendants had filed a report with the National Practitioners Data Bank[2] ("NPDB") stating that Chudacoff's privileges had been suspended indefinitely for "substandard or inadequate care" and "substandard or inadequate skill level;" and several other health care facilities had denied or revoked Chudacoff's privileges in turn.

The fair hearing committee ultimately disagreed with the MEC's suspension of Chudacoff's privileges based on the allegations of substandard care. At its October 28 monthly meeting, the MEC adopted the Fair Hearing Committee's recommendation to lift the suspension based on substandard care and instead required only peer review of Chudacoff's practice.

### III.    Procedural History

Chudacoff initiated this lawsuit on July 2, 2008 and later moved for partial summary judgment on two issues of law: (1) "whether the defendants violated his due process rights by suspending his hospital privileges and then reporting that suspension to the NPDB without notice or an opportunity to be heard"; and (2) whether the defendants are entitled to immu-

---

[2]The National Practitioner Data Bank is a national clearinghouse designed to facilitate information-sharing and thus prevent incompetent doctors from moving freely between states who might otherwise be unable to trace their negative records. Under the Health Care Quality Improvement Act (HCQIA), hospitals are required to report to the NPDB adverse professional review actions affecting a physician's clinical privileges. 42 U.S.C. § 11133(a)(1)(A); 45 C.F.R. § § 60.5(c), 60.10.

nity under the Health Care Quality Improvement Act ("HCQIA")." *See Chudacoff v. Univ. Med. Ctr. of S. Nev. ("Chudacoff I")*, 609 F. Supp. 2d 1163, 1171 (D. Nev. 2009). The district court issued a partial summary judgment order in which it concluded that Chudacoff's due process rights were violated when defendants suspended his staff privileges before giving him any type of notice, and reported him to the NPDB before providing him with any opportunity to be heard. *Id.* at 1173-74. The court further held that defendants failed to comply with 42 U.S.C. § 11112(a) and therefore were not entitled to HCQIA immunity. *Id.* at 1176-77. The district court denied defendants' motion to reconsider, and defendants appealed the issue of HCQIA immunity only.

Shortly after the district court granted partial summary judgment on the due process issue, Chudacoff sought leave to file a Third Amended Complaint to insert a reference to 42 U.S.C. § 1983 in his first and second counts, which previously alleged only violations of the Fourteenth Amendment. In seeking leave to amend, Chudacoff acknowledged his Second Amended Complaint was not properly pled because "the Constitution and its Amendments do not, in and of themselves, create a private right of action."

Defendants moved for summary judgment on all claims, including state law claims that are addressed in a separate memorandum disposition filed concurrently with this opinion. The district court then issued its final summary judgment order. It granted summary judgment to defendants on Chudacoff's federal due process claims on the basis of its finding that the physician defendants were not state actors and that the municipal defendants did not have a policy or practice of due process violations such as would allow municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).[3]

---

[3]The district court apparently found these rulings to be consistent with its conclusion in its first summary judgment order that Chudacoff's due process rights were violated by the defendants.

Based on its grant of summary judgment, the district court denied Chudacoff's motion for leave to amend as futile. Chudacoff timely appealed.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Charles Schwab & Co., Inc. v. Debickero*, 593 F.3d 916, 918 (9th Cir. 2010); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). Denial of a motion for leave to amend a complaint is reviewed for abuse of discretion. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 677 (9th Cir. 1993)).

## DISCUSSION

### I. Due Process Claim

[1] To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law.[4] *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *Am. Mfrs. Mut.*

---

[4]Chudacoff limited his first motion for partial summary judgment to the first of these two prongs, and the district court's ruling was commensurately limited in scope. The district court did not, as Chudacoff argues, hold that the violation of his due process rights occurred under color of law. As the moving party, Chudacoff bore the burden of presenting the absence of any genuine issue of material fact, and his belief to the contrary is erroneous. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the district court did not err in entertaining defendants' subsequent motion for summary judgment on the entire due process claim based on lack of state action.

*Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *see* 42 U.S.C. § 1983. The "under color of law" requirement under § 1983 is the same as the Fourteenth Amendment's "state action" requirement. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 928 (1982).

## A.    Individually Named Doctors

Several key matters are undisputed: (1) UMC is a county hospital; (2) the UMC Bylaws delegate authority to the Medical Staff, through its executive committee, to take adverse administrative actions against hospital staff, including suspension of physicians' hospital privileges; and (3) defendants Ellerton, Carrison, Bernstein, and Roberts were all voting members of the MEC whose names appeared on the May 28, 2008 letter suspending Chudacoff's staff privileges purportedly pursuant to the MEC's authority.

Although determining state action can admittedly be an imperfect science, we do not consider this case a difficult one. This is not the case of a private hospital whose only state link is its subjection to state regulation. *See, e.g.*, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 837-39 (9th Cir. 1999); *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024, 1034 (9th Cir. 1989) (compliance with statutorily created system of physician peer-review and with reporting requirements is insufficient to establish state action). Nor is this the case of a private, non-profit hospital whose state links consist merely of receipt of federal funds under the Hill-Burton, Medicaid, and Medicare programs, and exemption from state and federal taxes. *See, e.g.*, *Taylor v. St. Vincent's Hosp.*, 523 F.2d 75, 77 (9th Cir. 1975) (finding insufficient nexus to establish state action); *Watkins v. Mercy Med. Ctr.*, 520 F.2d 894, 896 (9th Cir. 1975); *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d

970, 972 (4th Cir. 1985); *Briscoe v. Bock*, 540 F.2d 392, 395-96 (8th Cir. 1976); *see also Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982).

This is not even the case of a publicly financed hospital that has leased its management and operation to a private corporation—circumstances under which appellate courts have found sufficient nexus to establish state action in the suspension of a physician's staff privileges. *See, e.g.*, *Milo v. Cushing Mun. Hosp.*, 861 F.2d 1194, 1197 (10th Cir. 1988) ("The defendants cannot escape liability by delegating responsibility to another party." (internal citations omitted)); *Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1221-22 (5th Cir. 1987) ("The private defendants cannot receive public funds, utilize public facilities, and serve a public purpose, yet insist that their private status forestalls any correction of a violation of the constitutional rights of their medical staff."); *Malak v. Assoc. Physicians, Inc.*, 784 F.2d 277, 282 (7th Cir. 1986) ("[T]he conduct of a public hospital and its employees is clearly state action and the conduct of otherwise private entities that act jointly with them is also state action.").

**[2]** Rather, UMC is through and through a public hospital, and "there is no dispute that the operation of [a public] hospital is state action and that [a public hospital] is required to meet the provisions of the Fourteenth Amendment in the admission of physicians to its staff." *Woodbury v. McKinnon*, 447 F.2d 839, 842 (5th Cir. 1971); *see Briscoe*, 540 F.2d at 394-95; *Birnbaum v. Trussell*, 371 F.2d 672, 677 (2d Cir. 1966).

**[3]** Despite this, the doctor defendants insist that they cannot be held liable for their conduct at issue here because they are private individuals not employed by the county hospital. But Chudacoff does not seek to sue them for actions performed in their capacity as private physicians. Rather, the basis for his § 1983 claims is their actions taken within the course and scope of their duties as governing members of the

Medical Staff, a subdivision of UMC mandated by state law. Even conduct of a private individual constitutes state action when there is a "such a close nexus between the State and the challenged action" that the individual's conduct "may be fairly treated as that of the State itself," such as when the nominally private actor is "controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in its management or control." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001) (internal quotation marks and citations omitted); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *Sutton*, 192 F.3d at 835.

**[4]** We think it clear that a sufficiently close nexus exists here and that the doctor defendants, in suspending Chudacoff's privileges to practice at a county hospital, were " 'clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Although comprised of privately employed physicians, the Medical Staff of UMC is controlled and managed by the UMC Board. Further, the doctors' authority to deprive Chudacoff of his staff privileges flows directly from the UMC, whose authority to regulate physician privileges at a county hospital is in turn directly authorized by Nevada law. The actions of defendants Ellerton, Carrison, Bernstein, and Roberts as governing members of the Medical Staff are therefore fairly attributable to the state, and they cannot now escape liability for their direct and personal participation in Chudacoff's unlawful suspension of staff privileges by claiming private conduct.

### B. Kathleen Silver

**[5]** As CEO of UMC, Silver sits on the MEC, but she does so in a non-voting, non-deliberating capacity. She does not ordinarily take part in the MEC's peer-review based credentialing decisions, and there is no evidence that she acted dif-

ferently here. Chudacoff does not dispute her limited, passive role at these MEC meetings but asserts that her presence as the "eyes and ears of the Commissioners" subjects her to liability for the MEC's unconstitutional actions. In the absence of evidence of her personal participation in the constitutional deprivation, Silver's mere non-voting membership in the MEC is insufficient to show that she was an "integral participant" in the deprivation of Chudacoff's rights, as is required to establish § 1983 liability. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Summary judgment in her favor was thus proper. *See Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### C.   UMC, the Board, and the Medical and Dental Staff

[6] Chudacoff also names three entity defendants: UMC; the Clark County Commissioners, in their official capacities as the UMC Board of Trustees; and the Medical and Dental Staff of UMC. Liability will lie against a municipal entity under § 1983 only if a plaintiff shows that his constitutional injury was caused by employees acting pursuant to an official policy or "longstanding practice or custom," or that the injury was caused or ratified by an individual with "final policymaking authority." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (internal quotation marks and citation omitted); *see Monell*, 436 U.S. at 694.

[7] Chudacoff has established neither. Not only has he failed to identify any custom or policy of UMC or the Medical and Dental Staff as the "moving force" behind his constitutional injury, *see Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007), but his entire claim against the individually named doctor defendants hinges on their alleged *non*compliance with the official policies and practices of the hospital. Nor has he established that an actor

with final policymaking authority personally participated in his constitutional injury. Although the Board has final policy- and decision-making authority over the UMC Bylaws and the MEC's disciplinary actions, Chudacoff presents no evidence that any Trustee took part in the deprivation of his due process rights. The Board's role in staff privilege matters is limited to appellate review of the MEC's decisions, and in this instance, far from ratifying the MEC's actions, it in fact ordered the MEC to reconsider its decision to report Chudacoff to the NPDB and mandated a second clinical fair hearing on the quality of care issue. The MEC's actions cannot be attributed to UMC or the Board. *See Avalos v. Baca*, 596 F.3d 583, 587-88 (9th Cir. 2010).

**[8]** Although the individual voting members of the MEC can be held liable under § 1983 for Chudacoff's constitutional injuries, nowhere does Chudacoff allege that these doctors have final policymaking authority for the county hospital, and there is no respondeat superior liability under § 1983. *Monell*, 436 U.S. at 692; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The district court correctly granted summary judgment in favor of UMC, the Commissioners, and the Medical and Dental Staff with respect to Chudacoff's constitutional claims.

## II. Leave to Amend

Leave to amend a party's pleading pursuant to Rule 15(a) of the Federal Rules of Civil Procedure "should [be] freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a), and generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party, *see Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Rule 15(a) is designed "to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.

1981); *see DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

**[9]** As discussed above, the district court erred in determining that only the MEC, not named a party to this suit, could be liable for Chudacoff's alleged § 1983 claims. Because Chudacoff pled sufficient facts alleging that Ellerton and the other individually named voting members of the MEC acted under color of state law in effecting the unconstitutional deprivation of his protected property interest, amending his Complaint to include reference to § 1983 would not have been futile, and, as the district court noted, granting Chudacoff leave to amend would not prejudice defendants, who have litigated this action as though Chudacoff had properly pleaded claims under § 1983. Given the district court's conclusion that defendants' actions amounted to due process violations, combined with our determination that Ellerton, Carrison, Bernstein, and Roberts' conduct clearly constituted state action, refusing Chudacoff leave to amend a technical pleading error, albeit one he should have noticed earlier, would run contrary to Rule 15(a)'s intent. Chudacoff must be permitted to amend.

## CONCLUSION

UMC is not a private hospital, but a public one. Consequently, the official actions of its administrative subdivisions, such as the MEC, are actions of the state, and the individual members of the MEC responsible for wrongfully depriving Chudacoff of his protected property interest in UMC staff privileges cannot escape § 1983 liability as private actors. To the contrary, when exercising their delegated authority to suspend, revoke, or otherwise limit Chudacoff's staff privileges at a public hospital, defendants Ellerton, Carrison, Bernstein and Roberts acted as agents of the state.

**AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this Opinion.**

Chudacoff's Motion for Sanctions is referred to the district court for disposition along with the remaining issues in this case.

Costs on appeal to appellant.