**LT INTERNATIONAL LTD., Plaintiff,**

v.

**SHUFFLE MASTER, INC., Defendant.**

**Case No. 2:12–cv–1216–JAD–GWF.**

United States District Court, D. Nevada.

Signed March 26, 2014.

Amanda C. Yen, Joseph P. Schrage, McDonald Carano Wilson LLP, Las Vegas, NV, Dariush Keyhani, Meredith & Keyhani, PLLC, East Aurora, NY, for Plaintiff.

Christopher R. Miltenberger, Eric T. Aldrian, James J. Pisanelli, Todd L. Bice, Pisanelli Bice, PLLC, Las Vegas, NV, for Defendant.

**Order Granting in Part and Denying in Part Defendant Shuffle Master's Motion to Dismiss [Doc. 17] and Plaintiff LT Game International Ltd.'s Motion for Leave to File Second Amended Complaint [Doc. 37]**

JENNIFER A. DORSEY, District Judge.

In this international, unfair competition case, the Court must determine whether the plaintiff gaming-technology company's five-page complaint sufficiently states claims for unfair competition under state, federal, and Macao law, and claims for tortious interference with existing and prospective business relationships and, if not, whether leave to amend should be allowed. Because plaintiff's factual allegations sound in fraud but do not satisfy Rule 9's heightened pleading standard, the Court finds that all claims save one must be dismissed for inadequacy. The Court will, however, allow limited amendment to cure these factual deficiencies.

### Background [1]

LT International, Ltd. ("LT") is a Canadian corporation authorized to do business

---

1. This description is intended only for general background and is not intended as any find-

in the State of Nevada. Doc. 14 at 1.[2] The company claims to market and sell gaming technology and services both in North America and international markets, including Macao. *Id.* at 2. Among the products LT is licensed to market and sell is a "Live Multi–Table System," an electronic interface that allows gamblers at a casino table to simultaneously place bets at other tables. *See id.* at 3.

Shuffle Master, Inc. is a direct competitor of LT. *Id.* LT alleges that in the year preceding the filing of its Complaint, Shuffle Master began "an international campaign of disparagement of [LT's] business and its products and services." *Id.* According to LT, Shuffle Master has, *inter alia,* wilfully misrepresented the quality of LT's products and services, including the Live Multi–Table System, to customers both in Nevada and Macao, damaging LT's business, both current and prospective. *Id.*

By its five-page, already once-amended complaint,[3] LT sues Shuffle Master for (1) Unfair Competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.;* (2) Unfair Competition under Nevada common law; (3) Unfair Competition under the Macau Commercial Code; and (4) Tortious Interference with Current and Prospective Business and Contractual Relations. Doc. 14 at 3–4. LT prays for an order enjoining Shuffle Master from making false representations about LT's products "to the public, the gaming and casino industry, and any current or prospect[ive] customer," or "unfairly competing with [LT] in any manner." *Id.* at 5. LT also seeks legal relief, including a disgorgement of Shuffle Master's profits; the damages LT sustained as a result of Shuffle Master's ac-

tions; attorney's fees and costs; and statutory damages under the Lanham Act. *Id.*

Shuffle Master moves this Court to dismiss all of LT's claims, arguing that the thin allegations in this five-page complaint alleging claims grounded in fraud are insufficient to state a cognizable claim for relief under FRCP 8, 9, and 12(b)(6). Doc. 17. Shuffle Master further urges dismissal of LT's tortious-interference claim on the grounds that any contract that may be the subject of that claim would be illegal and thus unenforceable because LT has not received the license necessary to sell or distribute gaming devices in Nevada. *Id.* at 12. LT opposes the motion, contending that its claims do not sound in fraud and thus require only notice pleading under Rule 8, which LT's allegations satisfy. Doc. 19. Nevertheless, should this Court find its allegations insufficient, LT should be granted leave to cure any deficiencies because this litigation remains in its infancy. *Id.* at 9.

In addition to its request for leave to cure deficiencies in its factual allegations, Doc. 19, LT also asks for leave to file a second amended complaint to add a new party (LT Game Canada) as a plaintiff because LT Game Canada is the true plaintiff for all claims arising before LT's formation in 2011. Doc. 37. Shuffle Master opposes this motion, contending that the proposed new version of the complaint still falls short of the specificity required by the rules, that LT acted in bad faith by sandbagging with this new party on the last day for amendment, and if LT Game Canada is the true real party in interest, the LT entities should have known that from the inception of this case. Doc. 42.

---

ing of fact.

**2.** LT originally filed this action on July 10, 2012, Doc. 1, and then duly amended its complaint on August 17, 2012. Doc. 14.

**3.** The Amended Complaint was filed as of right in response to Shuffle Master's first motion to dismiss, which was then denied as moot. Doc. 44

The Court finds both motions appropriate for disposition without oral argument. L.R. 78–2. For the reasons set forth below, both motions are granted in part and denied in part.

### Discussion

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) provides the basic standard for federal pleadings: "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction ....; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The United States Supreme Court fleshed out that standard and its relationship to FRCP 12(b)(6) in *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[4] "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."[5] The Court is also "not bound to accept as true a legal conclusion couched as a factual allegation."[6]

A complaint is subject to deeper scrutiny when it contains allegations of fraud or mistake. Rule 9 of the Federal Rules of Civil Procedure requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[7] Rule 9's "particularity" standard requires a plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."[8] This increased detail is required "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[9] Thus, claims grounded in fraud or mistake must meet both the "plausibility" standard of Rule 8(a) and the "particularity" standard of Rule 9(b),[10] ensuring they meet "Rule 8's requirement of simplicity, directness, and clarity," which "has among its purposes the avoidance of unnecessary discovery."[11]

### 1. Lanham Act Claim

■ LT's First Amended Complaint gestures to the "Lanham Act" and "unfair competition" without specifying the specific legal basis for this theory. *See* Doc. 14 at 3–4. From the sparse facts of LT's First Amended Complaint and its references in its opposition to the motion to dismiss, the Court concludes that LT relies on the Lanham Act's false adevertising

---

4. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

5. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

6. *Id.* (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

7. Fed. R. Civ. Proc. 9(b).

8. *Ebeid ex rel. United States v. Lungwitz,* 616 F.3d 993, 998 (9th Cir.2010).

9. *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985).

10. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1055 (9th Cir.2011); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.,* 655 F.3d 1039, 1047 (9th Cir.2011).

11. *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir.1996).

provision, 15 U.S.C. § 1125(a)(1)(B), as the sole basis for its Lanham Act false advertising claim. To prove that claim, the plaintiff must establish: (1) a false statement of fact was made by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.[12]

Shuffle Master contends that LT's Lanham Act claim should be evaluated under Rule 9(b)'s particularity standard because the allegations that support it are fraudulent in nature. Doc. 17 at 4–8. LT's allegations fail Rule 9's more demanding particularity standard, Shuffle Master contends, requiring dismissal of this claim. *Id.* LT challenges the notion that its allegations must be evaluated under the heightened Rule 9 standard merely because LT characterized Shuffle Master's intentional conduct as a "misrepresentation." Doc. 19 at 2–3.

### a. The Lanham Act claim is grounded in fraud.

 Neither fraud nor mistake is an element of a Lanham Act false advertising claim. To be actionable under this statute, the statement need only be "false" and result in "deception."[13] Thus, nothing in the elements of a Lanham Act false advertising claim themselves triggers Rule 9's heightened pleading standard.

But that's not the end of the analysis. In the Ninth Circuit, there is more than one way to trigger Rule 9. The language penned in a complaint when pleading a claim for which fraud is not an essential element may garner Rule 9 scrutiny:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).[14]

LT's contention that its claim cannot qualify as grounded in fraud merely by its use of the word "misrepresentation" is without merit because "[i]t is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."[15] Many courts analyzing Lanham

---

12. *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir.1997).

13. *Id.*

14. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103–04 (9th Cir.2003).

15. *Meridian Project Systems, Inc. v. Hardin Construction Co., LLC,* 404 F.Supp.2d 1214, 1219 (E.D.Cal.2005); *Elias v. Hewlett–Packard Co.,* 903 F.Supp.2d 843, 848–49 (N.D.Cal. 2012); *Settle v. World Savings Bank, F.S.B.,* 2012 WL 1026103, at *5 (C.D.Cal. Jan. 11, 2012); *see also Neilson v. Union Bank of California, N.A.,* 290 F.Supp.2d 1101, 1141 (C.D.Cal.2003) (noting that claims for fraud and "negligent misrepresentation" must both meet Rule 9(b)'s heightened particularity requirement); *Martinez v. Creative Concepts, Inc.,* 2012 WL 4490946, at *3 (D.Nev. Sept. 27, 2012) (citing *Meridian* in RICO action); *Smallwood v. NCsoft Corp.,* 730 F.Supp.2d 1213, 1230 (D.Hawai'i 2010); *ThermoLife International, LLC v. Gaspari Nutrition, Inc.,* 2011 WL 6296833, at *4–*5 (D.Ariz. Dec. 16, 2011); *In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation,* 2010 WL 1734848, at *3 (W.D.Wash. Apr. 28, 2010).

Act claims alleging "misleading and false representations" by a business competitor have concluded that the Rule 9(b) standard nonetheless applied because the complaint was grounded in fraud.[16]

In *Vess v. Ciba–Geigy Corp. USA*,[17] the Ninth Circuit articulated the proper, bifurcated procedure for a district court to employ when testing the sufficiency of a claim for which fraud is not an essential element but fraudulent conduct is nevertheless alleged. Only the fraudulent-conduct allegations must satisfy Rule 9; the others "need satisfy only the ordinary notice pleading standards of Rule 8(a)."[18] "If particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim."[19]

### b. LT's fraud-based allegations do not satisfy Rule 9.

The Court begins by evaluating whether LT's misrepresentation allegations that support this claim satisfy Rule 9. The claim itself consists of just three paragraphs: a repetition and reallegation of all prior paragraphs, the conclusory statement that "Defendant's aforesaid activities constitute unfair competition under the federal Lanham Act," and the assertion that those activities "have damaged and caused, and are damaging and causing, irreparable harm to the Plaintiff." Doc. 14 at 3–4. As these bare-bones in-count allegations offer nothing of substance, the Court first examines the realleged prior paragraphs, which include:

12. Over the past year, Defendant has begun an international campaign of disparagement of Plaintiff's business and its products and services and has directly and indirectly interfered with Plaintiff's business and potential business activities, dealings and contracts with customers in the United States and in Las Vegas, Nevada.

13. Defendant has made misrepresentations regarding Plaintiff's business and products, including Plaintiff's LT Game Live Multi–Table System, at international trade shows, including at the G2E gaming trade show in May, 2012 in Macau, and directly and indirectly to Plaintiff's current and prospective customers in the gaming and casino industry.

14. Defendant's misrepresentations include, but are not limited to, misrepresentations regarding the nature and quality of Plaintiff's services and products, including but not limited to, Plaintiff's LT Game Live Multi–Table System.

15. Defendant's aforementioned unlawful conduct, including misrepresentations to Plaintiff's customers and potential customers, including but not limited to, the Las Vegas Sand Corporation and The Venetian, located in Las Vegas, Nevada, have taken place in Macau, in the United States, and in Las Vegas, Nevada, among other places.

---

16. *See, e.g., TransFresh Corp. v. Ganzerla & Associates, Inc.*, 862 F.Supp.2d 1009, 1017–18 (N.D.Cal.2012); *Pestube Systems, Inc. v. HomeTeam Pest Defense, LLC*, 2006 WL 1441014, at *4–*5 (D.Ariz. May 2, 2006). Indeed, it is likely that most false advertising claims under § 1125(a)(1)(B) will trigger Rule 9(b) scrutiny because the first prong of the standard requires alleging that the defendant made a "false" statement and, thus, the plaintiff will allege either that a "false" representation was made with the intent to deceive (fraud), or that the false representation was made unwittingly, without the intent to deceive (mistake).

17. 317 F.3d at 1105.

18. *Id.* at 1105.

19. *Id.*

16. Defendant's misrepresentations have undermined and negatively impacted Plaintiff's business, current and prospective deals and contracts, including but not limited to, lost opportunity, scope of commitments, terms and value.

17. Defendant is engaging in this course of action willfully and with full knowledge and intent to interfere and damage Plaintiff's business deals with its current and prospect customers.

Doc. 14 at 2–3. Paragraphs 13–16 rely entirely on misrepresentations—a species of fraud—so LT was required to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."[20] The absence of even one of these identifiers justifies dismissal.[21]

■ LT's factual allegations in paragraphs 13, 14, 15, and 16 do not satisfy Rule 9(b). Paragraph 13 gestures broadly towards the "who," in that "Defendant" made the misrepresentations, and satisfies the "where" and "when" criteria by claiming that these misrepresentations occurred at, *inter alia,* the "G2E trade show in May, 2012." Doc. 14 at 3.[22] The "what" is arguably satisfied in paragraph 14, which alleges that the misrepresentations pertained to the "LT Game Live Multi–Table System." *Id.* But LT fails to offer the information to fill in the rest of the blanks. There is no indication of "how" the alleged statements were made (i.e., orally, by email, in a letter, on a Post-it). More importantly, LT provides no insight into

the factual content of any statement, despite its burden to allege with particularity "what is false or misleading about the purportedly fraudulent statement, and why it is false."[23] Despite having already once amended its complaint, LT still fails to sufficiently plead Lanham Act misrepresentation facts that satisfy Rule 9. The Court therefore strips away these allegations and looks exclusively to the remaining (non-fraud) allegations to determine whether they satisfy Rule 8 and save this claim from dismissal.

### c. LT's non-fraud-based allegations fail to state a Lanham Act claim.

■ Denuded of its fraud-related allegations, this claim consists of just two paragraphs:

12. Over the past year, Defendant has begun an international campaign of disparagement of Plaintiff's business and its products and services and has directly and indirectly interfered with Plaintiff's business and potential business activities, dealings and contracts with customers in the United States and in Las Vegas, Nevada.

17. Defendant is engaging in this course of action willfully and with full knowledge and intent to interfere and damage Plaintiff's business deals with its current and prospect customers.

Doc. 14 at 2–3. These allegations are little more than "a formulaic recitation of the elements of a cause of action," which the Court is not obligated to accept as true.[24]

---

20. *Ebeid,* 616 F.3d at 998.

21. *See, e.g., Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (finding that for allegations grounded in fraud, plaintiff was obligated to specify the time, place, and content of the alleged statements).

22. To the degree the alleged misrepresentation is "not limited to" the system or the

specified customers, LT's allegations are ignored as this vague gesture to the "rest of the world" fails the Rule 9(b) test.

23. *Ebeid,* 616 F.3d at 998.

24. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

They do not state a plausible claim of relief even under Rule 8's standard. Shuffle Master's Motion to Dismiss LT's Lanham Act claim is granted.

### 2. Nevada Unfair Competition Claim

The Ninth Circuit has acknowledged that "the tort of unfair competition is extremely broad" in Nevada.[25] But this claim still must be analyzed under federal pleading standards because "Rule 9(b)'s particularity requirement applies to state-law causes of action."[26] Thus, the Court must again determine whether LT's own allegations merit review under Rule 8 or 9.

■ For its Nevada unfair competition claim, LT again "repeats each and every allegation" from its general statement of facts and then alleges summarily that "Defendant's aforesaid activities constitute unfair competition under the State of Nevada's common law" and "have damaged and have caused, and are damaging and causing, irreparable harm to the Plaintiff." Doc. 14 at 4. Since LT relies on the same set of factual allegations for its state-law unfair competition claim as it does for its Lanham Act claim, the Court's analysis first "strips away" the inadequately pled, fraud-based paragraphs, *see supra*, leaving only paragraphs 12 and 17, which are, again, just "a formulaic recitation of the elements of a cause of action," and the Court is not obligated to accept them as true.[27] Even under the broad state-law standard, these threadbare allegations do not state a cognizable claim for relief. Shuffle Master's request to dismiss this claim is granted.

### 3. Macao Unfair Competition Claim

■ Shuffle Master next argues that LT's claim for violation of Macao's unfair competition law also "sounds in fraud" and thus suffers from the same fatal defects as the previous claims. LT again directs the Court back to paragraphs 13–15 to search for the facts LT contends support this claim to Rule 9's standards. The Court returns from that search empty handed, for these allegations have not been rendered more substantial by their third reallegation.

LT also attaches to its pleading approximately 25 pages of what it purports is a section of Macao's commercial code, translated from Portugese into English. Doc. 14–1. LT includes no affidavit or other proof that this is an accurate, professionally performed translation. Even assuming the veracity and reliability of this document, LT has triggered Rule 9 by basing this claim on fraud-based allegations whether or not fraud is an essential element of an unfair competition claim under Macao law. Again, LT's allegations fall short of Rule 9's standard, warranting the dismissal of this claim.

### 4. Tortious Interference with Current and Prospective Business and Contractual Relations

Shuffle Master next contends that LT's claim for "tortious interference with current and prospective business and contractual relations" must be dismissed because LT has not obtained any licenses from the State of Nevada permitting it to sell gambling products in the State, and thus it

---

**25.** *Golden Nugget, Inc. v. American Stock Exchange, Inc.,* 828 F.2d 586, 591 (9th Cir. 1987).

**26.** *Vess,* 317 F.3d at 1102. For example, Rule 9(b) has been applied to claims of negligent misrepresentation brought under Nevada law, even though the law itself does not mention

fraud, because such a state of mind is an "essential element" of the claim. *Scaffidi v. United Nissan,* 425 F.Supp.2d 1159, 1170 (D.Nev.2005) (citing *Vess* ).

**27.** *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

fails to state a claim for interference with contractual relations because there were no valid "contracts" to interfere with. Doc. 17 at 12–13. LT responds that reliance on Nevada licensure is misplaced, as its allegations in this Count "are not limited solely to Defendant's activities within the State of Nevada, but rather worldwide, including in Macau and Australia." Doc. 19 at 9.

As the Nevada Supreme Court explained in *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*,[28] "[t]o establish intentional interference with [existing] contractual relations, the plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." A plaintiff prevails on a claim for interference with prospective economic advantage by proving: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct."[29] Additionally, "a plaintiff must show that the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable."[30]

In addition to referencing the same set of factual allegations that underlie all of the other claims above when pleading these two claims together in a single count, LT offers four new paragraphs: 29–32. Doc. 14 at 4–5. Of these new allegations,

paragraph 31 must be disregarded because it relies on Shuffle Master's "misrepresentations" but again fails to identify with particularity the nature of the misrepresentations. The remaining paragraphs are not grounded in fraud and may be considered under Rule 8. Thus, the Court must determine whether paragraphs 29, 30 & 31, combined with paragraphs 12 & 17, state either of the claims pled in this collective count:

12. Over the past year, Defendant has begun an international campaign of disparagement of Plaintiff's business and its products and services and has directly and indirectly interfered with Plaintiff's business and potential business activities, dealings and contracts with customers in the United States and in Las Vegas, Nevada.

17. Defendant is engaging in this course of action willfully and with full knowledge and intent to interfere and damage Plaintiff's business deals with its current and prospect customers.

. . .

29. As described herein, Plaintiff has been in communications and negotiations with current and prospective customers for sale of its gaming and casino products.

30. Defendant has been aware of these communications and negotiations.

32. Defendant's aforesaid actions have undermined and damaged Plaintiff's business relations with its current and prospective customers and have resulted

---

**28.** 109 Nev. 1043, 862 P.2d 1207, 1210 (1993).

**29.** *Wichinsky v. Mosa*, 109 Nev. 84, 847 P.2d 727, 729–30 (1993); *In re Amerco Derivative Litigation*, 252 P.3d 681, 702 (Nev.2011).

**30.** *Custom Teleconnect v. International Tele-Services, Inc.*, 254 F.Supp.2d 1173 (D.Nev. 2003); *see Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 591 P.2d 1135, 1137 (1979).

in the loss of business deals and contracts.

Doc. 14 at 2–5.

■■■ Nothing within the four corners of these paragraphs suggests that LT has contracts or business outside of the United States, or that Shuffle Master's "international campaign of disparagement" impacts any *contracts* outside of Nevada. This appears to conflict, or at least chafe, against its argument that Shuffle Master's actions, and LT's injury, "are not limited solely to Defendant's activities within the State of Nevada, *but rather worldwide, including in Macau and Australia.*" Doc. 19 at 9 (emphasis added). But the *Hilton* standard does not require the contract at issue to be forged in Nevada to state a claim for intentional interference with a contract. LT is missing one critical component of its allegations, however: it failed to allege that these contracts are "valid" and "existing." Although LT mentions two "customers" located in Las Vegas, Nevada—the "Las Vegas Sands Corporation and the Venetian"—it does not indicate that these "customers" were parties with whom LT had a "valid and existing contract." Without this critical allegation, LT's claim for interference with existing contracts must be dismissed.

■■■ This deficiency is not fatal to LT's claim for interference with prospective relationships, however. The standard for recovery on a "prospective" tortious interference theory does not require pleading the existence of a valid contract.[31] Thus, the Court finds under Rule 8 that the remaining allegations sufficiently raise a plausible claim for relief. Shuffle Master's Motion to Dismiss LT's claim for "tortious interference with ... prospective business and

contractual relations" is, therefore, denied. LT's Amended Complaint survives with a sole remaining claim for tortious interference with prospective business and contractual relations.

## B. LT's Motion for Leave to Amend Complaint

In its Opposition to Shuffle Master's motion to dismiss, LT argued that if its First Amended Complaint is found inadequate, it should be permitted leave to file a second amended complaint. Doc. 19 at 8. On January 24, 2013, Magistrate Judge Foley conducted a discovery hearing in this case and remarked that the allegations in LT's First Amended Complaint appeared inadequate. *See* Doc. 29 at 17–19. A week later, on the amendment deadline, *see* Doc. 20 at 4, LT moved to file a Second Amended Complaint. LT suggests that its second amended complaint (proposed as Doc. 37–1) would serve two purposes: (1) permit LT to supplement any insufficient factual allegations; and (2) add a new plaintiff. Doc. 37. The Court finds that amendment is appropriate **in part,** denies the request to add LT Canada as a party, and rejects the Second Amended Complaint in the form proposed; but the Court grants LT leave to amend its own claims to supplement them with properly detailed, true facts to cure the deficiencies identified in the dismissal discussion above.

### 1. Standard for leave to amend

Rule 15 of the Federal Rules of Civil Procedure requires district courts to "freely give leave [to amend] when justice so requires."[32] The Ninth Circuit has long recognized that this policy is "to be applied with extreme liberality."[33] In the seminal

---

31. *See Wichinsky,* 847 P.2d at 729–30.

32. Fed. R. Civ. Proc. 15(a)(2); *Sonoma County Association of Retired Employees v. Sonoma County,* 708 F.3d 1109, 1117 (9th Cir.2013).

33. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir.2003) (quotation omitted).

leave-to-amend case of *Foman v. Davis*,[34] the United States Supreme Court explained, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the Plaintiff] ought to be afforded an opportunity to test his claim on the merits."

 Still, amendment is not automatic. If reasons justify denying opportunity to amend, the court has discretion to foreclose amendment.[35] In the Ninth Circuit, courts consider five factors when determining whether to grant leave: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint.[36] Any of the first four factors can serve as a basis for denying leave to amend,[37] but the analysis focuses on the bad faith of the party seeking to amend the complaint, as well as the prejudice to the other party.[38]

## 2. Leave is granted for the limited purpose of allowing LT an opportunity to cure the factual deficiencies in its claims.

When applying the factors, the Court finds that limited amendment is warranted. Although the analysis yields the conclusion that fairness dictates that LT be permitted an opportunity to cure the pleading deficiencies that the Court has now identified, should LT be able to do so, the Court does not find that a new plaintiff should be permitted based on LT's deadline-date request.

### a. Bad Faith

The Court finds no evidence that LT's request to amend to cure any factual defects in its own claims is brought in bad faith. LT timely asked for this relief in its opposition to Shuffle Master's motion to dismiss, and it offered some factual supplementation in its proposed Second Amended Complaint.

The same cannot be said about LT's request to add LT Canada as a plaintiff on the amendment-request deadline, however. Although LT claims that its proposal to add its Canadian counterpart was made in response to problems in obtaining discovery from Shuffle Master, as well as "the independent decision of the management and parent company of LT Game Canada to ... bring action against the Defendant for damages sustained as a result of Defendant's unlawful actions," Doc. 43 at 11, the notion that the LT organization did not know which of its entities was the real party in interest with respect to this lawsuit is unconvincing. LT was obligated to investigate its claims prior to filing suit, and its threadbare initial complaint and subsequent discovery conduct reflect that any failure to name the correct—or all of the correct—plaintiffs appears to be the result of a lack of diligence not a surprise late in the discovery process. *See* Doc. 42 at 10–11. The facts that LT never identified LT Canada as an interested party under Rule 7.1 [39] and only sought to add

---

34. 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

35. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227.

36. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir.2004).

37. *Chudacoff v. University Medical Center of So. Nev.*, 649 F.3d 1143, 1152 (9th Cir.2011).

38. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992); *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir.2013).

39. Local Rule 7.1–1 mandates that "[u]nless otherwise ordered ... counsel for private ... parties shall identify in the disclosure statement required by Fed.R.Civ.P. 7.1 all persons, associations of persons, firms, partnerships or corporations (including parent corporations) which have a direct, pecuniary interest in the outcome of the case." L.R. 7.1–1(a). "A party must promptly file a supplemental certification upon any change in the information that this Rule requires." *Id.* at 7.1–1(c). In this case, LT represented that "there are no known interested parties other than those

this party after Judge Foley *sua sponte* questioned the adequacy of LT's allegations at a hearing further suggest a complete lack of diligence and bad faith in the investigation of the true owner of these claims. Thus, the bad faith factor weighs in favor of allowing LT to amend its claims to supplement with facts to cure the deficiencies identified in dismissing these claims but against permitting LT Canada to participate as a new plaintiff in this case.

### b. Undue delay

█ The Court similarly finds that LT did not unduly delay its request to amend to add new factual allegations to support its existing claims, but it did unduly delay in identifying LT Canada on the final day for seeking leave to amend pleadings. "In assessing timeliness, we do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."[40]

Consequently, "[d]elay alone does not provide sufficient grounds for denying leave to amend."[41]

It strains credulity that LT did not know LT Canada's purported role in this case before filing suit or when filing its first amended complaint in response to Shuffle Master's first motion to dismiss. Even if the request to add this new plaintiff was made by the midnight deadline, if truly meritorious, it should have been made before that. Thus, this factor weighs in favor of factual amendment but against adding a new party.

### c. Prejudice to the opposing party

█ "The consideration of prejudice to the opposing party carries the greatest weight."[42] Considering the timing of the requests and the direction of discovery, the Court finds that Shuffle Master will not be prejudiced by permitting LT to amend its complaint only to supplement its existing claims with facts to cure the identified deficiencies. But adding another plaintiff at this time—in light of the status of this case and when LT should have known

named in the caption." Doc. 10 at 1. Certification "is time-sensitive because the court uses it to 'evaluate possible recusal.'" *Olds v. Wynn Las Vegas, LLC*, 2012 WL 4792919, at *3 (D.Nev. Oct. 9, 2012) (quotation omitted).

Courts in this district have found that this rule "requires greater disclosure than Federal Rule 7.1, which only requires non-governmental corporate parties to disclose parent corporations or corporations owning more than 10% of the party's stock." *Righthaven v. Democratic Underground, LLC*, 791 F.Supp.2d 968, 978–79 (D.Nev.2011). Other district courts have found that a party's failure to submit a certification after ordered to do so by the Court warrants dismissal of the action. *See, e.g., National Credit Union Administration Board v. North Star Business Services, LLC*, 2012 WL 4076152, at *1–*2 (D.Nev. Aug. 21, 2012); *United States v. Dilullo*, 2007 WL 3124544, at *1 (D.Nev. Oct. 23, 2007). Although the Court has found no case addressing the duty to *supplement* its Certification,

nothing in the plain language of the Local Rule suggests that a different result should be reached in this instance. Notably, in *Righthaven*, the Court ordered additional briefing on the topic of why disclosure had not been made, indicating why it should not be sanctioned for failing to disclose other parties' interests in the case. *See id.* at 978–79.

40. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir.2006) (quotation omitted); *see Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir.1991) (finding that an eight-month delay between the time a relevant fact was obtained to the time that leave to amend was sought was unreasonable).

41. *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industry of Southern California*, 648 F.2d 1252, 1254 (9th Cir. 1981).

42. *Sonoma*, 708 F.3d at 1117 (quoting *Eminence Capital*, 316 F.3d at 1052).

about the need for LT Canada's inclusion, if any, long before January 31, 2013— would unduly prejudice Shuffle Master. Discovery was completed based on the claims and parties existing in the First Amended Complaint, and a significant amount of discovery has been performed. *See* Doc. 78 at 2–7. Discovery is now closed, and Shuffle Master has filed a motion for summary judgment against LT based on the evidence developed in discovery. Doc. 79. Permitting LT to amend its complaint to add LT Canada as an additional plaintiff would expand the scope of this litigation and necessitate the reopening of discovery. The Ninth Circuit has recognized that amendment is unduly prejudicial when it would obligate the opposing party to conduct additional discovery.[43] Although Shuffle Master will not be unduly prejudiced by permitting LT to amend its complaint to cure factual deficiencies, addition of a new plaintiff would be unfair at this juncture.

### d. Failure of previous amendments to cure pleading deficiencies

Shuffle Master contends that LT has repeatedly failed to cure deficiencies after having had two opportunities to file satisfactory claims, and this fact should cut against any amendment. Doc. 42 at 15. Although the district court's discretion to deny a motion for leave to amend a complaint is particularly broad when "a plaintiff has previously been granted leave to amend and fails to add the requisite particularity to [its] claims,"[44] LT's first amended complaint was the result of amendment as of right, not upon successful motion and not after dismissal of claims with instructions on how to cure their deficiencies.[45]

Accordingly, this factor does not weigh against amendment in this case.

### e. Futility

Finally, the Court considers whether amendment would be futile in this case. The proposed second amended complaint suffers from a number of problems that would result in amendment being futile if the court were to accept and allow the filing of LT's pleading in that form. For example, the proposed amended pleading defines "Plaintiffs" as LT and LT Canada, collectively, but does a confusing job of explaining which plaintiff is the subject of which allegation or claim. The Court is also not convinced that the facts as alleged in the proposed second amended complaint provide the requisite "how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement[s], and why [they are] false"[46] to survive a third motion to dismiss. Thus, in drafting the next version of the complaint, LT is cautioned that it should err on the side of being overly inclusive and descriptive with the how, what, and why, because the Court is unlikely to permit amendment beyond the opportunity that is being offered by this order absent truly extraordinary circumstances. Considering that discovery has been completed, the Court can perceive no obstacle to comprehensive factual inclusion except the true lack of a cognizable claim for relief.

In sum, the Rule 15(a) factors weigh in favor of permitting LT to file a second amended complaint that cures the factual deficiencies identified above, but they cut against permitting LT to add a new plaintiff in this litigation. LT's re-

**43.** *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir.1990).

**44.** *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1167 (9th Cir.2009),

**45.** *See Davis v. Social Service Coordinators, Inc.*, 2011 WL 3207818, at *2 (E.D.Cal. July 28, 2011).

**46.** *Ebeid*, 616 F.3d at 998.

quests for leave to amend are granted only in part; LT may file a newly drafted, second amended complaint within 15 days of this order if it believes it can offer sufficient facts to revive its now-dismissed claims. Should LT choose not to file an amended complaint on these conditions, the case will proceed on LT's remaining claim for tortious interference with prospective business relations.

## Conclusion

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

It is **HEREBY ORDERED** that Shuffle Master, Inc.'s Motion to Dismiss [Doc. 17] is **GRANTED** in part and **DENIED** in part:

1. It is **GRANTED** as to LT's Unfair Competition claim brought under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

2. It is **GRANTED** as to LT's Unfair Competition claim brought under the Macao Commercial Code Articles 156–73, Title X, Book I.

3. It is **GRANTED** as to LT's Unfair Competition claim brought under Nevada common law.

4. It is **GRANTED** as to LT's claim for Tortious Interference with Contracts.

5. It is **DENIED** as to LT's claim for Tortious Interference with Prospective Business Relations.

It is **FURTHER ORDERED** that LT's Motion for Leave to File Second Amended Complaint [**Doc. 37**] is **GRANTED** in part and **DENIED** in part. LT may file a newly drafted, second amended complaint within 15 days of this order if it believes it can offer sufficient facts to revive its now-dismissed claims. Should LT choose not to file an amended complaint on these conditions, the case will proceed on LT's remaining claim for tortious interference with prospective business relations.