

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RODRIGO AGUIRRE,<br>　　　　　　　Debtor. | BAP No. SC-25-1005-SCB<br><br>Bk. No. 23-03639-CL7 |
| MARIO MONTES MORA,<br>　　　　　　　Appellant,<br>v.<br>RODRIGO AGUIRRE,<br>　　　　　　　Appellee. | Adv. No. 24-90014-CL<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Chief Bankruptcy Judge, Presiding

Before: SPRAKER, CORBIT, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Appellant Mario Montes Mora sued Chapter 7[1] debtor Rodrigo

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Aguirre under § 523(a)(2)(A) to except from discharge a debt arising from a stipulated judgment. He also objected to Aguirre's discharge under § 727(a)(2)(A) and (a)(4)(A). After several amendments to these claims, the bankruptcy court dismissed Mora's third amended complaint in its entirety without leave to amend.

Mora had more than ample opportunity to state legally sufficient claims but failed to do so. On appeal, Mora fails to demonstrate any error. Accordingly, we AFFIRM.

## FACTS[2]

Mora's appeal focuses exclusively on his third amended complaint ("TAC"). He raises no issues arising from the prior versions of his complaint. Therefore, our factual recitation relies on the allegations set forth in the TAC and the documents attached to or incorporated into the TAC by reference.

### A. The initial transaction between Mora and Aguirre.

The TAC pleads that Mora provided Aguirre with $108,358.09 worth of seafood from Mexico. Initially, Mora refers to this transaction as a "sale," but he later refers to it as part of a joint venture agreement between him, Aguirre, and Aguirre's corporation Ocean's Best Seafood ("Ocean's Best"). The joint venture was to be known as Baja Pacific Fish, LLC ("Baja") and

---

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

was to resell the seafood in the United States. According to Mora, he and Aguirre were supposed to share the sale proceeds.[3] Mora alleges that Aguirre made misrepresentations and omissions "in or about 2018" to fraudulently induce him to provide the seafood. Mora states that Aguirre never intended to share the sale proceeds as promised but rather always intended to use Baja "as his own company and wrongfully misappropriated profits which should have been paid by Aguirre to Mora pursuant to the joint venture." The TAC does not detail what Aguirre told him—or when. Mora does state that he justifiably relied on Aguirre's alleged false promise(s). But again, the TAC does not specify what if any actions he took to his detriment **after** Aguirre allegedly made the false promise(s). Indeed, it is impossible to tell from the TAC how or when Mora delivered the seafood in relationship to Aguirre's alleged fraudulent conduct.

## B.    Mora sues Aguirre and others in state court.

Mora sued Ocean's Best, Aguirre, and Aguirre's two brothers in state court in 2019. The TAC discusses this lawsuit only in vague terms. The TAC states several times that this lawsuit "included a claim for fraud."

---

[3] The stipulated judgment and transcript from the state court settlement proceedings attached to the TAC show that the action and stipulated judgment were in the name of Mora and his company, Comasu Distbuidora S. De R.L. De C.V ("Comasu"). Both were named as plaintiffs. The TAC largely ignores the distinction between Mora and his company. For purposes of this appeal, any such distinction appears irrelevant.

Mora, however, fails to reference the other causes of action that were stated in the state court lawsuit.[4]

Instead, the TAC focuses on Mora's settlement of that lawsuit. Mora did not attach a copy of the state court complaint as an exhibit to the TAC, but he did attach a copy of the transcript from a state court hearing conducted on September 12, 2022. During that hearing, the terms of the settlement were stated for the record, and no written settlement agreement was drafted. As set forth in the transcript, Ocean's Best (through Aguirre) promised to pay Mora $45,000 in monthly installments of $1,000. The settlement transcript repeatedly refers to Aguirre as the "guarantor" of the settlement payments. The settlement further provided that if Ocean's Best failed to make the required payments, Mora was entitled to entry of a stipulated judgment against Ocean's Best and Aguirre for $82,417.99, less credit for any settlement payments made. Under the settlement, Mora immediately dismissed Aguirre's brothers from the lawsuit, with prejudice.

Mora contends that Aguirre defrauded him a second time when entering into the settlement. According to Mora, Aguirre never intended to make the settlement payments as promised. Rather, Mora alleges that Aguirre entered into the settlement solely to induce Mora to dismiss the

---

[4] Mora filed in March 2024 a proof of claim in which he stated that the basis of his claim was "goods sold." There is no mention at all of fraud in the proof of claim. The bankruptcy court, meanwhile, took judicial notice of the state court docket and stated: "The complaint includes causes of action for (1) breach of contract, (2) fraud, (3) negligent misrepresentation, (4) unjust enrichment, and (5) common counts."

4

lawsuit against his bothers. Mora alleges that this was part of a fraudulent transfer scheme; once Aguirre fraudulently procured the release of his brothers from the state court lawsuit, he transferred "tools and equipment, a walk-in cooler, ice machine, and a freezer" to them. Mora contends that the settlement and asset transfer were both part of an overarching plan to enable Aguirre and his brothers to continue their seafood business operations free from the debt owed to Mora and Comasu.[5]

Almost a year after the settlement, on August 17, 2023, the state court entered judgment on the parties' stipulation. Judgment was entered against Ocean's Best and Aguirre in the amount of $73,417.99. Neither the settlement hearing transcript nor the subsequently entered stipulated judgment stated that Mora was entitled to judgment on any particular cause of action. Rather, based on the settlement, the parties agreed that in the event of a payment default Ocean's Best and Aguirre would be liable for $82,417.99 less any payments made prior to entry of the judgment. The fact that judgment was entered for $73,417.99 indicates that Ocean's Best or Aguirre made $9,000 in settlement payments prior to entry of the judgment.

//

---

[5] Mora apparently asserts that another aspect of Aguirre's plan to evade collection of Mora's judgment was to shift his seafood business operations from Ocean's Best to his sole proprietorship known as Oceans Best Community Fish Market. It is unclear how this would evade liability as both Ocean's Best and Aquirre were liable under the settlement and stipulated judgment.

## C.    Aguirre files chapter 7 bankruptcy.

Aguirre filed his chapter 7 petition and his initial schedules and statement of financial affairs ("SOFA") in November 2023. The only reference to Ocean's Best in the schedules and SOFA is found in response to question 19 of Schedule A/B. Aguirre identified Ocean's Best as his wholly-owned corporation, which he stated had no value. Mora contends that Aguirre prepared false schedules that downplayed or negated the role of Ocean's Best (one of the judgment debtors) and instead falsely claimed that he operated his seafood business prepetition through a proprietorship. There are several references in his bankruptcy filings stating that Aguirre conducted his seafood business prepetition as a sole proprietorship under the trade name "Oceans Best Community Fish Market." Aguirre stated in his Schedule I that at the time of his bankruptcy filing, he was self-employed and earned roughly $3,000 per month in net income from the sole proprietorship. Oddly, despite his scheduled $3,000 in net monthly income, Aguirre stated in his SOFA that he had no income from employment or business operations in 2021, 2022, and 2023. Aguirre later amended his SOFA to reflect gross prepetition income from his sole proprietor seafood business of $60,000 in 2023, $88,000 in 2022, and $88,000 in 2021.

Aguirre disclosed in his SOFA that he had been both a sole proprietor and an officer, director, or managing executive of a corporation within the four years prior to the bankruptcy filing. When asked in question 27 of his

6

SOFA to identify the business names of these entities, he listed the proprietorship, another company known as Oceanside Associates, and Baja. Though Aguirre listed Ocean's Best in his schedules, he failed to list it in his answer to question 27.

Mora also alleged that Aguirre's schedules and other bankruptcy papers contained numerous other misstatements and omissions. Several of these related to his theory that Aguirre wrongfully shifted his seafood business operations from Ocean's Best to the proprietorship. Mora alleged that there was no fictitious business name statement for the proprietorship, so Aguirre could not possibly have operated a sole proprietorship. And the TAC further alleged that Aguirre "filed an Income and Expense Declaration in [a] Domestic Support Action which demonstrates his false oath, fraudulent transfer, and fraud in this Bankruptcy."

Finally, Mora identified several other miscellaneous matters involving alleged misrepresentations and omissions:

- Aguirre fraudulently omitted from his schedules his interest in Pacific Stone Crab LLC ("Stone Crab").

- Aguirre failed to list the state court domestic support judgment entered against him. Mora claims that this omission was part of Aguirre's efforts to fraudulently conceal the inconsistencies between his financial reporting in the domestic support proceedings and in the bankruptcy case. But Aguirre did list a domestic support obligation elsewhere in his schedules.

- Aguirre wrongly listed Mora as an unsecured creditor instead of a

7

secured creditor based on his recorded abstract of judgment in 2023.

- Aguirre's petition misstated where he lived.

- The petition attempted to hide an interest in real estate located on Melrose Avenue in Chula Vista, California, in part, by falsely not listing it as his residence.

- Aguirre amended his schedules to falsely omit certain tangible business assets—the same ones he allegedly fraudulently transferred to his brothers (tools and equipment, walk-in cooler, ice machine, and a freezer).

**D.    The motion to dismiss the TAC.**

As he had done with prior versions of the complaint, Aguirre moved to dismiss the TAC. He asserted that it did not meet the pleading standards set forth in Civil Rules 8(a) and 9(b)—and in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Mora opposed the motion to dismiss, but the bankruptcy court agreed with Aguirre.

The bankruptcy court entered a judgment of dismissal with prejudice in favor of Aguirre, and Mora timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.    Did the bankruptcy court err when it granted Aguirre's motion to dismiss Mora's TAC?

2. Did the bankruptcy err when it dismissed the TAC with prejudice—without leave to amend.

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decision to dismiss a complaint under Civil Rule 12(b)(6). *See Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc). When we review a matter de novo, we give no deference to the bankruptcy court's prior rulings. *Nordeen v. Bank of Am., N.A. (In re Nordeen )*, 495 B.R. 468, 475 (9th Cir. BAP 2013).

Generally speaking, we review the bankruptcy court's decision to dismiss without leave to amend for an abuse of discretion. *See, e .g., Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017); *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013). On the one hand, federal appellate courts "review strictly" the trial court's exercise of this discretion. *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.), amended, 856 F.2d 111 (9th Cir. 1988). On the other hand, the strictness of this review diminishes as the plaintiff is given additional opportunities to amend the complaint. As the Ninth Circuit has stated, a court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Zadrozny*, 720 F.3d at 1173 (internal quotation marks omitted) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011)). The Ninth Circuit also has stated that "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the

9

complaint could not be saved by any amendment." *Intri–Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

We may affirm on any ground supported by the record. *Uzun v. City of Santa Monica,* 54 F.4th 595 (9th Cir. 2022).

## DISCUSSION

Mora challenges the bankruptcy court's determination that he did not sufficiently plead claims for relief under § 523(a)(2)(A), § 727(a)(2)(A), and § 727(a)(4)(A). We will address each claim in turn. But first we will set forth the general standards governing the sufficiency of pleadings.

**A.    General standards governing the sufficiency of pleadings.**

Civil Rule 12(b)(6) motions test the legal sufficiency of the plaintiff's complaint. They challenge whether the complaint presents any cognizable legal theories and whether it contains sufficient factual allegations to support those legal theories. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A claim is facially plausible only if it contains enough factual allegations that, if taken as true, would allow the court to reasonably infer that the defendant is liable to the plaintiff. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id.* Mere legal conclusions are not accepted as true and do not by themselves establish a plausible claim for relief. *Id.*

Ultimately, a plaintiff must plead "more than a **sheer possibility** that a defendant has acted unlawfully." *Id*. (emphasis added). Dismissal is appropriate if a complaint contains factual allegations "that are merely consistent with a defendant's liability." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotation marks omitted).

The Civil Rules governing pleading—made applicable in adversary proceedings by Rules 7008 and 7009—further refine the federal pleading standards. Civil Rule 8(a)(2) states that all claims for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." But when pleading fraud, the plaintiff "must state with particularity the circumstances constituting fraud." Civil Rule 9(b); *see also Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). The plaintiff must include in his or her fraud allegations "the who, what, when, where, and how of the misconduct charged." *Id.* (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Importantly, this requires plaintiffs like Mora to plead fraud claims with specificity as to what they were told, when, by whom, and what parts they relied on. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."); *see also McMaster v. United States*, 731 F.3d

11

881, 898 (9th Cir. 2013) ("Particularity generally necessitates a great deal of specificity.").

Moreover, in some instances, the falsity of the alleged misrepresentations **when made** will not be obvious from the type and nature of the misrepresentation alleged. *See Decker v. GlenFed, Inc.* (*In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548-49 (9th Cir.1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011). In such a context, the plaintiff also should plead facts plausibly showing why he or she believes the alleged misrepresentations were false when made. *See id.* Thus, in the context of alleged false promises in entering into a contract, the fraud plaintiff ordinarily should plead facts plausibly showing why he or she believes that the defendant's promise was false when made.

Mora's TAC, as well as his appeal brief, repeat the same scattershot litany of factual allegations for each of his claims for relief—rendering them almost incomprehensible. The appeal brief offers little assistance as it contains virtually no legal analysis in support of Mora's bald contention that each of his claims for relief was sufficiently pled. The only concrete and specific legal analysis Mora included in his appeal brief cites to this Panel's decision in *Italiane v. Jeffrey Catanzarite Family Ltd. Partnership (In re Italiane)*, 632 B.R. 662, 672 (9th Cir. BAP 2021), *aff'd*, 2022 WL 17412881 (9th Cir. Dec. 5, 2022), as it relates to issue preclusion. However, as we explain in detail below, Mora misunderstands and misapplies *In re Italiane* to his

12

case.

We decline to pick through Mora's scattershot allegations in an effort to match them with any legal theories that Mora has never articulated but which might support reversal. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929-30 (9th Cir. 2003); *see also Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012). With this in mind, we turn our attention to examining the claims Mora asserted in his TAC.

**B.    Section 523(a)(2)(A)**.

Section 523(a)(2)(A) excepts from discharge any debt arising from false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. A claim under § 523(a)(2)(A) typically is pled by stating the elements of a common law cause of action for fraudulent misrepresentation. The required elements are:

> (1) the debtor made representations;
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representations; and
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010) (cleaned up). A "false promise" is one type of misrepresentation that can lead to a nondischargeable debt under § 523(a)(2)(A), but only if the debtor harbored an intention not to perform at the time the promise was made; a

subsequently-developed intent to not perform is insufficient for nondischargeability. *Wagner v. Malich (In re Malich)*, 2011 WL 3300818, at *5 (9th Cir. BAP Mar. 15, 2011) (citing *Eashai v. Citibank, South Dakota, N.A., (In re Eashai)*, 167 B.R. 181, 185 (9th Cir. BAP 1994), *aff'd*, 87 F.3d 1082 (9th Cir. 1996)). Civil Rule 9(b) applies to claims under § 523(a)(2)(A). *See Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 734 (9th Cir. BAP 2001).

Mora maintains that Aguirre committed fraud, originally, by inducing him to deliver his seafood and, later, by entering into the settlement.[6] The bankruptcy court granted Mora leave to amend his complaint multiple times to particularly identify which specific representation(s) induced Mora to enter into both transactions and when Aguirre made these representations. The court also required Mora to provide details as to Aguirre's knowledge and fraudulent intent. The court concluded that Mora failed to sufficiently plead any viable theory in support of his § 523(a)(2)(A) claim.

### 1. Fraudulent inducement to deliver seafood.

According to Mora, Aguirre fraudulently induced him to provide

---

[6] Mora includes allegations sounding in fraudulent transfer within his claim under § 523(a)(2)(A). But he fails to make any reference in his appellate brief to fraudulent transfers in his scant discussion of his § 523(a)(2)(A) claim. Consequently, Mora has forfeited any argument that he asserted a claim for a prepetition fraudulent transfer that gave rise to nondischargeable damages under § 523(a)(2)(A). Generally speaking, claims for fraudulent transfer belong exclusively to the bankruptcy estate upon the filing of a bankruptcy. *See Valente v. Nowland (In re Valente)*, 2022 WL 2176785, at *7 (9th Cir. BAP June 16, 2022).

seafood based on the alleged false promise to share the proceeds from resale of the seafood in furtherance of a joint venture agreement between Mora and Aguirre. But after four attempts, the TAC remains bereft of any specific information regarding Aguirre's representations, including the content and timing of the parties' alleged agreement, stating only that they were to split profits. Both before the bankruptcy court and on appeal Mora argues that the stipulated judgment entered by the state court established Aguirre's fraud because that complaint included a claim for fraud among other claims. In support of this argument, Mora cites this court's decision in *In re Italiane*.

We agree with the bankruptcy court that *Italiane* is distinguishable and does not aid Mora. In *Italiane*, the bankruptcy court granted relief from stay to permit prosecution of a pending state court action that included claims for securities fraud under California law, fraudulent misrepresentation, fraudulent nondisclosure, and conspiracy to commit fraud. 632 B.R. at 666. The bankruptcy court noted that the state court claims largely overlapped the facts and issues raised in the nondischargeability adversary proceeding. Moreover, the court anticipated that resolution of the state court action would lead to application of issue preclusion resolving the § 523(a) claims. *Id.* Unlike the present case, the parties in *Italiane* ultimately stipulated to a judgment in the state court case for fraudulent concealment recognizing that the debt would be nondischargeable in bankruptcy. *Id*. at 667-68. We affirmed the bankruptcy

15

court in *Italiane,* agreeing that the stipulated judgment for fraud was entitled to issue preclusive effect.

Despite several opportunities, Mora has failed to allege anything to establish that his stipulated judgment arises specifically from a fraud claim to give it preclusive effect on the issue of fraud in his adversary proceeding. California law controls here and requires the party seeking to apply issue preclusion to prove:

> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015) (citing *Lucido v. Super. Ct.*, 51 Cal.3d 335, 34 (1990)).

Under *Iqbal* and *Twombly*, Mora's conclusory statement that issue preclusion applies to his stipulated judgment is clearly insufficient. The TAC merely alleges that Mora's state court action included a claim for fraud. This is insufficient as there are no allegations that judgment was entered on the fraud claim. Mora attached to the TAC copies of the judgment and the transcript from the settlement hearing, but neither document refers to any specific cause of action. Other than involving the same parties, Mora failed to sufficiently allege any of the other issue preclusion elements.

16

Mora does not otherwise challenge the court's dismissal of his fraudulent inducement claim related to the seafood. Nonetheless, we note the absence from the TAC of sufficient specificity as to this claim. Thus, we agree with the bankruptcy court that this claim was neither plausible nor sufficiently particular. Indeed, while it is possible that Aguirre fraudulently induced Mora to deliver the seafood, in the parlance of *Iqbal* and *Twombly*, the claim as amended "stops short of the line between possibility and plausibility of entitlement to relief."

## 2. Fraudulent inducement to enter stipulated judgment.

Mora's § 523(a)(2)(A) claim included allegations that Aguirre fraudulently induced him to enter into the stipulated judgment without any intent to pay but only to insulate his brothers from liability. Mora argues that Aguirre entered into the stipulated judgment only to continue the fish business with his brothers, obtain dismissal of Mora's claims against them, and fraudulently transfer assets beyond his reach.

As noted above, Mora's claim for fraudulent inducement required him to allege that Aguirre had the requisite fraudulent intent at the time the parties entered into the settlement. Yet, it is apparent from the TAC and the attached stipulated judgment that Aguirre partially performed his settlement obligations. As reflected in the TAC, the stipulated judgment, and the settlement transcript, Aguirre made $9,000 total in settlement payments. The TAC fails to address this even though partial payment is clear given the reduced amount of the stipulated judgment. Partial

17

performance of a contract typically is compelling evidence militating against a finding of fraudulent intent in nondischargeability actions based on promissory fraud. *See Snapir v. Breliant (In re Snapir)*, 2017 WL 5022354, at \*5 (9th Cir. BAP Nov. 3, 2017) (citing *In re Malich*, 2011 WL 3300818, at \*7).

Under these circumstances, *Iqbal*, *Twombly*, and *GlenFed* all stand for the proposition that it was incumbent on Mora to give some plausible explanation why Aguirre's representation (or false promise) was **false when made**. Without such an explanation, the allegation that Aguirre **never** intended to perform is not plausible and the claim is merely one for breach of contract not fraud. To hold otherwise would permit frustrated creditors with breach of contract claims to impermissibly convert such claims into fraud claims for purposes of nondischargeability under § 523(a)(2)(A).

## C.     Section 727(a)(2)(A).

Section 727(a)(2)(A) denies the debtor a discharge when he or she—with the intent to hinder, delay, or defraud his creditors or the estate—"has transferred, removed, destroyed, mutilated, or concealed" his property "within one year before the date of the filing of the petition." As the Ninth Circuit has explained, "A party seeking denial of discharge under § 727(a)(2)(A) must prove two things: (1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the

18

property." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (cleaned up). A claim under § 727(a)(2)(A) is subject to Civil Rule 9(b) only to the extent the claim is based on the debtor's fraud. *See Kubik v. FDIC (In re Kubick)*, 171 B.R. 658, 661 (9th Cir. BAP 1994).

Mora's § 727(a)(2)(A) claim is directed at Aguirre's alleged transfer to his brothers of the same tangible assets referenced throughout his complaint—tools and equipment, the walk-in cooler, an ice machine, and a freezer. Aguirre listed these items in his original and first amended Schedule B—as his personal property. It was not until Aguirre filed his second amended Schedule B that he omitted the walk in cooler, explaining that it belonged to the building owner. As the bankruptcy court noted, only the cooler has ever been omitted from Aguirre's amended Schedule A/B; the other tangible assets were all still scheduled as Aguirre's property. The court concluded that the TAC's allegations were conclusory and not sufficiently particular.

On appeal, Mora simply disagrees with the bankruptcy court. Once again, his appellate brief merely repeats the same vague fraudulent transfer allegations set forth in the TAC. Mora fails to provide any legal analysis explaining why he believes his § 727(a)(2)(A) claim was legally sufficient. He merely states: "Plaintiff has properly pled a claim that Aguirre should not be granted a discharge pursuant to 11 U.S.C. section 727(a)(2)(A)." Aplt. Opn. Br. at 20. In fact, his legal argument fails to even identify the specific assets at issue, merely stating that he "disposed of his property."

19

Nor did Mora ever identify how or specifically when any tangible assets were fraudulently transferred. This is particularly problematic as § 727(a)(2)(A) is restricted to transfers within a year of the petition filing. Yet, Aguirre's schedules indicate that he still has possession and control of the tools and equipment, the walk-in cooler; the ice machine; and the freezer. Indeed, Aguirre's schedules originally indicated that he owned each of these items. Aguirre amended his schedules to indicate that his possession and control of the cooler arise not from outright ownership but from his leasehold interest in 72 E J St., Chula Vista, California—the building in which he represented he lived and operated his seafood business at the time of his bankruptcy filing.

Mora merely disputes Aguirre's recharacterization of his interest in the cooler. But the TAC fails to specifically identify any qualifying transfer of the personal property, including the walk-in cooler affixed to Aguirre's leased property. Moreover, both the TAC and Mora's opening appeal brief fail to plausibly or coherently explain how Aguirre's amendment of his schedules—which specifically stated that the cooler belongs to the building owner—is indicative of any transfer, much less a fraudulent, prepetition one for purposes of § 727(a)(2)(A). Civil Rule 9(b), *Iqbal*, and *Twombly* each required Mora to plead more than the mere conclusory compliance with the statutory requirements of § 727(a)(2)(A). Without any specificity regarding the transfers, the TAC fails to state a plausible claim.

As we explained above, we will not sift through Mora's shotgun

allegations in search of a viable legal theory in support of his § 727(a)(2)(A) claim—especially when his counsel has failed to provide one. In short, Mora has failed to establish any ground for reversal of the bankruptcy court's dismissal of his § 727(a)(2)(A) claim.

**D.    Section 727(a)(4)(A)**.

Section 727(a)(4)(A) denies the debtor a discharge when "the debtor knowingly and fraudulently, in or in connection with the case[,] made a false oath or account." As recognized in *Retz*, "[a] false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *In re Retz*, 606 F.3d at 1196 (quoting *Khalil v. Devs. Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd & adopted*, 578 F.3d 1167, 1168 (9th Cir.2009)). A party seeking denial of discharge under § 727(a)(4)(A) must prove four things: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Id.* at 1197 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)). Claims under § 727(a)(4)(A) are subject to Civil Rule 9(b). *Kubick*, 171 B.R. at 661.

In dismissing Mora's § 727(a)(4)(A) claim, the bankruptcy court focused on the failure to sufficiently allege materiality and that Aguirre made the false oaths knowingly and fraudulently. For purposes of § 727(a)(4)(A), materiality is interpreted very broadly, in part, because "the viability of the system of voluntary bankruptcy depends upon full, candid,

21

and complete disclosure by debtors of their financial affairs." *In re Retz*, 606 F.3d at 1199; *see also Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999) ("The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations."). Thus, under § 727(a)(4)(A), "[a] fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Retz*, 606 F.3d at 1198 (cleaned up); *see also In re Wills*, 243 B.R. at 63 ("a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition." (citation omitted)). Yet, a plaintiff still must present some plausible basis for concluding that the alleged false oath is material to the case. This is because "a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge under § 727(a)(4)(A)." *Khalil*, 379 B.R. at 172.

As noted previously, Mora alleges a number of errors and omissions in Aguirre's schedules and SOFA. We address each in turn.

### 1. Aguirre's income.

In the TAC, Mora alleges that Aquirre submitted an Income and Expense Declaration in a prior domestic support action that demonstrates Aguirre made a false oath in his bankruptcy schedules about receiving

22

monthly business income from his proprietorship. The declaration, filed on July 26, 2023, stated that Mora worked at "Community Fish Market Inc." beginning on June 1, 2023, that he worked about 40 hours a week, and was paid $25 per hour. The declaration also stated that on average, over the prior 12 months, Aguirre had earned $3,221.12 per month.

Mora appears to allege that the declaration was inconsistent with his later declaration submitted to the bankruptcy court in support of his motion to convert the case to chapter 13. In his bankruptcy declaration, Aguirre stated that as of date he filed for bankruptcy, the County of San Diego had closed his business and Aguirre had to work for months with the county to reopen his business. The bankruptcy court held that Mora's conclusory statements failed to sufficiently identify what the alleged lies were or that they were knowingly and fraudulently made.

On appeal, Mora simply repeats the very same nebulous allegations without explaining specifically how Aguirre knowingly and fraudulently presented a false oath in his bankruptcy filings. Mora has provided no coherent or plausible explanation as to why these statements are even inconsistent, much less how he has pled a false oath under § 727(a)(4)(A). It is unclear why Mora believes these declarations are in conflict. Nor is it clear why he believes they establish that the bankruptcy declaration or Aguirre's schedules contain a material falsehood that was knowingly and fraudulently made. Once again, Mora's conclusory and vague allegations are insufficient to state a plausible claim under § 727(a)(4)(A).

## 2. Business interests.

Mora contends that Aguirre failed to list an interest in Stone Crab. The bankruptcy court held that the failure to list an interest in Stone Crab was not material because it is listed as inactive since 2019 on the California Secretary of State's website. Mora does not dispute or challenge the court's reasoning on appeal.

Mora also asserts that Aguirre falsely listed his interest in Oceans Best Community Fish Market as a sole proprietorship. He argues that Aguirre has continued to misrepresent that his income comes from this sole proprietorship rather than from Ocean's Best—a California corporation. In support of this contention, he alleged that Aguirre never filed a fictitious business name statement in San Diego county.[7] However, in his appeal brief, Mora merely references paragraphs 8 through 94 of his TAC and baldly concludes that "Aguirre has knowingly and fraudulently, in or in connection with this case, made a false oath" under § 727(a)(4)(A). Aplt. Opn. Br. at 19. This is not a helpful or sufficient analysis to explain why Mora's § 727(a)(4)(A) claim is legally cognizable. Mora's allegations are

---

[7] The bankruptcy court found that this allegation was "irrelevant" because the official records of the California Secretary of State indicated the existence of an entity called Ocean's Best Community Fish Market, Inc., an active corporation by the same name. We are a bit confused by the court's reference and the conclusion it draws from the reference. Even so, Mora has not even suggested it was error because he failed to address it within his appellate brief.

classic conclusory allegations that the Supreme Court has repeatedly refused to accept as sufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 680-81; *Twombly*, 550 U.S. at 556-57.

Similarly, the TAC fails to adequately allege that the omission of either the Stone Crab interest or the inclusion of the sole proprietorship was material. Mora's appellate brief did not challenge the bankruptcy court's taking judicial notice of the inactive status of Stone Crab. Nor did Mora challenge the court's conclusion that the failure to list an entity that has been inactive for four years prior to the bankruptcy filing was immaterial. Such an omission may be material in a different set of circumstances, but the TAC failed to allege such a situation.[8]

As to Aguirre's listing of the Oceans Best Community Fish Market as a sole proprietorship, he has listed his interest in Ocean's Best Seafood as well as Oceans Best Community Fish Market. Both businesses have been disclosed, and Aguirre has stated that he has received his income from Oceans Best Community Fish Market. Both the trustee and creditors have been advised of those interests. Without further specific allegations establishing the materiality of these interests, Mora has merely alleged a possible claim of false oath but after several attempts has failed to allege a plausible claim.

---

[8] At oral argument, Mora's counsel posited that this omission was material because the parties had agreed to operate their joint venture through Stone Crab. But the TAC alleged otherwise. The TAC stated that the alleged joint venture was to be operated through Baja—a different entity.

### 3. The Melrose Avenue property.

The bankruptcy court also addressed Mora's claim that Aguirre fraudulently omitted his interest in 1687 Melrose Avenue, Unit L, Chula Vista, California. Mora alleges in the TAC that Aguirre was served with process at the Melrose Avenue property sometime during the domestic support action and this is evidence of an ownership interest. According to the court, none of the specific facts Mora alleged plausibly demonstrated that Aguirre held such an interest. The court also relied in part on information from the official county real property records showing that others hold legal title to the property.

Again, Mora's appellate brief fails to provide any legal analysis explaining why his § 727(a)(4)(A) claim was viable based on his theory arising from the Melrose Avenue property—other than his unsupported belief that Aguirre owns an interest in that property. In his petition, Mora stated that he lived at 72 E J St., Chula Vista, California, which also is the address of his seafood business. His Schedule A/B listed his ownership interest in 1939-41 Ensenada St., Lemon Grove, California, as well as a security deposit for rent.

Mora's claim of false oath for failing to list an ownership interest in the Melrose Avenue property again states only a "possible" claim. He alleged only conclusions and does not challenge on appeal the bankruptcy court's judicial notice of the real property records evidencing ownership of

that property by nondebtor third parties. As such, Mora has failed to establish that the bankruptcy court erred in dismissing his § 727(a)(4)(A) claim as to the omission of the Melrose Avenue property from Aguirre's bankruptcy schedules.

### 4. Miscellaneous omissions.

In the TAC, Mora also claimed that Aguirre made false oaths by (1) failing to disclose his interest in the tangible assets allegedly fraudulently transferred, though his amended Schedule A/B continued to claim ownership of three of the four subject assets and explained why he no longer claimed ownership of the walk-in cooler; (2) failing to list Mora's claim as secured, though Aguirre's schedules did list the claim as unsecured; and (3) failing to list a judgment for domestic support, though he did list his support obligation in his schedule of monthly expenses. Mora appears to have cut and pasted into his appeal brief the relevant factual allegations from the TAC, but he has failed to specifically discuss any of these three items within his § 727(a)(4)(A) argument.

The court held that Mora failed to sufficiently allege the materiality of not listing the domestic support judgment. It also held that the subject tangible assets were, in fact, scheduled as Aguirre's property—except for the walk-in cooler (which was specifically discussed in the amendment). It further concluded that Mora's allegation that Aguirre's real property lease would show that the walk-in cooler was owned by Aguirre was impermissibly conclusory. The court did not specifically discuss Aguirre's

27

failure to list Mora's claim as secured—though the underlying debt was disclosed.

On appeal, Mora has wholly failed to address how and why the bankruptcy court erred in dismissing his § 727(a)(4)(A) claim as to these items. We will not make arguments for reversible error where he has not done so.

### E.      Leave to amend.

Mora complains that the bankruptcy court should have granted him leave to amend his complaint for a fourth time. As we indicated above, when the plaintiff is given additional opportunities to amend, the trial court's discretion to deny leave to amend becomes progressively broader. *Zadrozny*, 720 F.3d at 1173; *United States ex rel. Cafasso*, 637 F.3d at 1058. Importantly, Mora fails to explain why the prior versions of his complaint lacked the particularity needed to support his claims related to the seafood he provided to Aguirre. All of the missing specifics should have been readily within Mora's knowledge—because he claims to have been a party to the contract in which the false promise was made.

With respect to the false promise claim arising from the settlement, Mora has never explained why he plausibly believes that Aguirre never intended to perform the settlement despite Aguirre's partial performance. And in four attempts to state a fraud claim, Mora has not even tried. Absent such an explanation, this claim is hopelessly implausible. Without the required explanation, Mora's false promise claim is nothing more than

"a pretext for the discovery of unknown wrongs." *Kearns*, 567 F.3d at 1125 (quoting *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

As for his fraudulent transfer claims, Mora has never coherently explained why he believes that Aguirre transferred away the tools and equipment, the walk-in cooler, an ice machine, and a freezer. As we explained above, Aguirre's original and amended schedules all indicate that each of these items was still within his possession and control at the time he filed bankruptcy. If Mora had facts to plausibly allege that a transfer of these tangible assets actually occurred prepetition, it defies belief that he would not have included them in one of his four prior versions of his complaint. In its analysis of Mora's first amended complaint, the bankruptcy court warned Mora that his complaint needed to be more specific regarding the transfer of these tangible assets. Yet despite two additional amendments, Mora never has managed to plausibly explain why he believes that the subject tangible assets—all referenced in Aguirre's schedules—had been transferred away by Aguirre.

Finally, as to Mora's § 727(a)(4)(A) claim, after having four opportunities to state this claim, there is no reason to believe on this record that Mora can or will be any more successful in curing the deficiencies in this claim if given a fifth opportunity.

Under these circumstances, the bankruptcy court did not commit reversible error when it denied Mora leave to amend.

## CONCLUSION

For the reasons set forth above, we AFFIRM.